BETTIE LIPSCOMB ET AL. v. HOUSTON & TEXAS CENTRAL RAILWAY COMPANY AND WELLS-FARGO EXPRESS COMPANY.

No. 1030. Decided November 4, 1901.

**1.—Death—Act of Servant—Express Company.**

Article 3017, subdivision 1, Revised Statutes, does not give an action for death caused by the act of a servant against common carriers, eo nomine, and an express company which merely engages space for transportation of goods on cars otherwise wholly controlled by a railroad company is neither a proprietor, owner, charterer or hirer of the vehicle, and is not liable under the statute for death caused by its servant. (P. 18.)

**2.—Death—Corporation—Act of Servant.**

Though an express company may be liable under the second subdivision of article 3017, Revised Statutes, for death caused by its own act or omission, it is not so liable for death through the act of its servant. (P. 18.)

**3,—Death—Act of Servant—Negligence—Intentional Killing.**

It is questioned whether the statute making railway companies liable for death caused by the negligence of their servants would apply to the case of a willful killing by. the servant in the attempt to promote the master's business. (P. 19.)

**4.—Same—Negligent Killing—Mistaking for a Burglar.**

The act of the servant of a railway company employed to protect property in its depot, in shooting an employe upon a train, whom he mistook for a burglar, may constitute such want of care in the master's service as to come within the meaning of a killing by negligence for which the master is liable under article 3017, Revised Statutes, though the killing was intentional. (Pp. 18-20.)

**5.—Servant—Right of Station Agent to Employ.**

A railroad station agent charged with the preservation of the company's property has no power implied therefrom to employ, for the company, assistants to protect it. (P. 20.)

**6.—Servant—Compensation.**

A station agent who was authorized to employ assistants to protect the property of the company would make the assistant placed by him at that duty a servant of the company though his service was gratuitous. (P. 20.)

**7.—Master and Servant—Duty to Warn of Danger.**

Whether it was the duty of a railway company to give warning, to its trainmen passing through a station, of the employment of armed guards to protect its property at the depot from burglars, was a question of fact, depending on whether the presence of such employes at the depot and the danger to them ought to have been foreseen, and could not be treated by the court as a duty in law. (Pp. 20, 21.)

**8.—Same—Master's Knowledge.**

Knowledge by a station master employing armed guards to protect the depot against burglars would be knowledge of their presence there by the company, so far as concerned the question of its duty to warn other employes. (Pp. 20, 21.)

**9.—Opinion Evidence—Powers of Station Agent.**

A witness familiar with the subject may testify as to the powers habitually exercised by station agents, as bearing on the extent of the authority conferred on them by usage, but can not give his opinion, from what he had. seen, as to the possession of powers he had not known them to exercise. (P. 21.)

**10.—Damages—Evidence.**

That deceased was a member of the church and did not use profane language was too remote a circumstance to be of value in determining the pecuniary loss to his family from his death. (P. 21.)

**11.—Death—Damages—Life Insurance.**

Evidence that plaintiffs received life insurance by reason of death of a. husband or parent is not admissible to decrease the damages recoverable for his death by defendant's negligence. (P. 21.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

Bettie Lipscomb and others sued the railway company and the express. company, and recovered judgment which was reversed on defendant's appeal. Plaintiffs then obtained writ of error on the ground that the: opinion settled the case.

*Carden & Carden* and *M. M. Parks,* for plaintiffs in error.—The court did not err in instructing the jury to find for the plaintiffs: Because (1) the testimony shows, without dispute, that the deceased Lipscomb was the employe of defendant railroad company, and as such employe it became his duty to go to its depot at Rice, Texas; and that defendant railroad company knew through Moore, its station agent and representative, that said depot was at the time being guarded by armed guards to prevent expected burglaries, and to catch expected burglars; and that it knew Lipscomb was en route to Ennis on an engine threatening to break down, and in the event of its breaking down it was his duty to report it to the master mechanic at Ennis, and that the said station of Rice was on his way to Ennis, and that it might become his duty to report it by telegraph from Rice, or any other station accessible to the point where it should break down; that notwithstanding this knowledge, defendant railroad company did not warn deceased Lipscomb of the presence of the armed guards in the telegraph office, nor of the purpose of their presence there; and that he went there without notice or knowledge that he was thereby incurring any personal danger, and was killed by one of said guards while he, the said Lipscomb, was endeavoring to perform his duty as defendant's employed engineer.

That Moore's knowledge was the company's knowledge: Railway v. Whitmore, 58 Texas, 287; Railway v. Wilson, 24 S. W. Rep., 686; Railway v. Threat, 34 S. W. Rep., 152.

That company is liable because it failed to warn Lipscomb: Railway v. Garrett, 13 S. W. Rep., 62; Railway v. Walker, 26 S. W. Rep., 513; Railway v. Watts, 64 Texas, 568; Railway v. Calbreath, 1 S. W. Rep., 622; Railway v. White, 13 S. W. Rep., 65; Baxter v. Roberts, 44 Cal., 187; Elledge v. Railway, 100 Cal., 282; Coombs v. Cordage Co., 102 Mass., 572; Perry v. Marsh, 25 Ala., 659; Williams v. Clough, 3 H. & N., 258; Clarke v. Holmes, 7 H. & N., 937; Smith v. Oxford Iron Co., 42 N. J. L., 467; 1 Shearm. & Redf., Neg., 5 ed., sec. 203; 3 Elliot on Railroads, sec. 1283.

And because (2) the evidence shows, without dispute, that deceased Lipscomb, while in the discharge of his duty as said defendant railroad company's engineer, was willfully and wrongfully killed by one Gatlin, who was armed and placed in the depot for the purpose of protecting the property in the depot from burglars, and for the purpose of arresting them, by Moore, defendant's agent in charge of said depot; and that, in so arming and placing Gatlin in said depot, Moore acted in the scope of his duty, and that in killing said Lipscomb the said Gatlin acted in the scope of his duty. Said defendant railroad company is therefore liable as a matter of law.

That Moore and Gatlin acted in the scope of their respective duties: Railway v. Kennedy, 29 S. W. Rep., 394; Echols v. Dodd, 20 Texas, 191; Railway v. Scott, 68 Texas, 697; Railway v. Anderson, 17 S. W. Rep., 1039; Railway v. Griffith, 35 S. W. Rep., 741; Railway v. Graves, 2 Texas U. C., 306; Fick v. Railway, 32 N. W. Rep., 527; 14

Am. and Eng. Enc. of Law (old edition), 810; Railway v. Osborn, 7 Am. Neg. Rep., 207.

That the company is liable as a matter of law for Gatlin's act because the killing was wrongful; and that it was wrongful is not disputed: So. Pac. Co. v. Bender, 57 S. W. Rep., 574; Railway v. Donohoe, 56 Texas, 162; Croft v. Smith, 51 S. W. Rep., 1089; Garcia v. Sanders, 37 S. W. Rep., 314.

And because (3), even though it were disputed in the evidence that Gatlin acted within the scope of his authority as the agent of said defendant railroad company when he killed Lipscomb, or that Moore acted within the scope of his authority as said defendant's station agent in stationing armed guards in the depot at Rice, or that said defendant had notice of the presence of said armed guards in said depot, or that Gatlin acted wrongfully and recklessly in killing Lipscomb, or that Lipscomb acted prudently and in the line of his duty in going to and approaching said depot at said time, still no request that any of these issues should be submitted to the jury was made by said defendant at the trial; and there being evidence in the record to sustain the judgment upon each of these issues, the trial court will be deemed to have resolved said issues in favor of the judgment. Insurance Co. v. Moore, 46 S. W. Rep., 1131; McCreary v. Robinson, 57 S. W. Rep., 682.

And because (4), even though plaintiff's case could have been defended against by a plea of contributory negligence, and even though the facts would have justified a charge upon a plea of contributory negligence (which they would not), and even though plaintiff's case could have been defended against by a plea that Gatlin in killing Lipscomb acted under a reasonable apprehension or fear of death or serious bodily harm, and even though the facts had justified a charge upon such a defense (which they did not), still the court could not have presented these defenses in his charge, because they were not pleaded by either of the defendants, and even though they had been pleaded and it had been proper for the court to have submitted them in his charge to the jury, still the error, if error it had been, could not be taken advantage of by defendants, because they requested no instructions with respect to them. 1 Enc. of Pl. and Prac., p. 845; Konigsberger v. Harvey, 7 Pac. Rep., 114; Atkinson v. Harran, 68 Wis., 405; Croft v. Smith, 51 S. W. Rep., 1089; Railway v. Trammell, 9 So. Rep., 870; Railway v. Watson, 72 Texas, 631; Railway v. Shieder, 30 S. W. Rep., 902; Railway v. Bennett, 13 S. W. Rep., 319; Dailey v. Houston, 58 Mo., 361; Thomas v. Werremeyer, 34 Mo. App., 665.

On the general proposition that all acts of justification must be specially pleaded, see Coal Co. v. Lawson, 31 S. W. Rep., 843; Railway v. Greenwood, 21 S. W. Rep., 559.

And (4a) the fact that Gatlin swore that he thought Lipscomb was about to shoot him can not be considered on the issue of reasonable apprehension of danger, because this issue was not pleaded. Fayette v. Day, 34 N. W. Rep., 592.

And because (5), even if contributory negligence and reasonable apprehension or fear of death or serious bodily harm had been pleaded, in order to avail themselves of the latter defense it was necessary for defendants to plead and prove that the act of Gatlin in the killing of Lipscomb was necessary under the circumstances to repel an assault or prevent impending injury.   Hinton v. State, 24 Texas, 454.

And because (6), even if defendants had pleaded contributory negligence and reasonable apprehension or fear of death or serious bodily harm on the part of Gatlin, and that his acts, under the circumstances, were necessary to repel an assault, or prevent impending injury, the evidence is undisputed that Lipscomb was not guilty of contributory negligence, and that Gatlin had no reasonable apprehension or fear of death or serious bodily harm, and that in killing Lipscomb he was neither repelling an assault nor preventing impending injury to himself or the property he was guarding, and the evidence being thus without dispute, it was proper for the court to charge peremptorily as it did.

And because (7), even if Moore had not acted in the scope of his duty in posting Gatlin to guard the depot, and even if Gatlin had not acted in the scope of his duty in killing Lipscomb (but that the acts of each were in the scope of their respective duties is undisputed), defendants could not take advantage thereof on this appeal, because neither of them has filed a plea of confession and avoidance setting up the killing of Lipscomb by its agent and denying that the agent acted within the scope of his duty, and there being no dispute in the evidence that Moore was the station agent in charge of the property of both defendants and that it was his duty to protect it, and that he instructed Gatlin, the employe of the railroad company, who was subject to his orders, to stand guard in the station, and that Gatlin while guarding the property mistook Lipscomb for a burglar and killed him, it was necessary, in order to raise the issue of whether or not Moore and Gatlin acted within the scopes of their respective duties, for defendants to specially plead that they did not by a plea of confession and avoidance.   National Bank v. Taylor, 40 S. W. Rep., 876; Willis & Bro. v. Hudson, 63 Texas, 678; Herndon v. Ennis, 18 Texas, 411; Railway v. Anderson, 17 S. W. Rep., 1039; Hendrick v. Robert Mitchell Furniture Co., 29 S. W. Rep., 750; Railway v. Trammell, 9 So. Rep., 870; Railway v. Donahoe, 56 Texas, 162; Easton v. Dudley, 14 S. W. Rep., 583; Railway v. Griffith, 35 S. W. Rep., 741.

And because (8), the failure of defendants to warn Lipscomb of the danger of approaching the depot at Rice at the time he was killed, was an omission of duty which rendered defendants liable as a matter of law. Joske v. Irvine, 44 S. W. Rep., 1059; Lee v. Railway, 36 S. W. Rep., 63, and the authorities cited under subdivision 1, supra.

The court did not err in refusing to charge the jury that in estimating damages they would not consider the fact that deceased Lipscomb was a member of the church and that he did not use profane language, etc. Because (1) as suggested in the case of Railway v. Lehmberg, 12

Southwestern Reporter, 838, it was proper for the jury to assess damages resulting from pecuniary injuries, and.if these damages were sustained by the loss of bodily care or intellectual culture, or moral training, the jury is at liberty to allow them, and that he was a member of the church and did not use profane language, etc., tended to show that his death entailed a loss of moral training. Railway v. Gormley, 27 S. W. Rep., 1052; Railway v. Cowser, 57 Texas, 304; 2 Thomp. on Neg., sec. 1290; Pierce on Railroads, sec. 396.

Because (2), even if this court should be of opinion that membership of a church and failure to use profane language, etc., could not be looked to in determining the pecuniary loss, then the trial court did not err in his charge to the jury, for he instructed them to look alone to the pecuniary loss sustained by plaintiffs, and in special charges requested by appellant railroad company and by the court given he instructed them to look alone to the pecuniary loss, and to no other element of loss, and in special charge requested by appellant railroad company he instructed them to take into consideration solely the pecuniary loss, and not to consider deprivation of the society and companionship of deceased. Railway v. White, 56 S. W. Rep., 204.

An examination of the testimony of W. C. Francis will disclose that the trial court correctly admitted it. It is complained by appellant that it was incompetent and irrelevant; was hearsay and opinion evidence; that Francis did not qualify himself as an expert; and that the duty and powers of Moore, the station agent, depended upon a contract between the railroad company and himself.

(1) These complaints are without merit, because Francis not only testified that he was experienced in railroading, etc., but that he knew the duty of station agent, and that the duty of the local agent at. Rice was the same as the duties of other station agents, and it is nowhere shown by appellant that Moore's duties were in any way different from those of other station agents.

(2) Even if it had been error to admit the testimony of W. C. Francis, which it was not, it was harmless error, because Francis testified merely to the duties of station agents and in a general way to Moore's duties, and the testimony as to these duties being undisputed in the record, the addition of the testimony of Francis did not and could not affect the case.

The court did not err in refusing to allow defendant to prove that deceased Lipscomb's life was insured for the benefit of plaintiffs, because such testimony is inadmissible. Railway v. Cody, 50 S. W. Rep., 135; Railway v. Weaver, 41 S. W. Rep., 846; Railway v. Harrington, 62 Texas, 597.

Appellant railroad company being charged with the duty of protecting the depot and the property therein, any act in furtherance of this duty was in the scope of the agent's duties; that he was so charged is undisputed; that he placed the armed guards in the depot because of burglaries committed is undisputed; the circumstance that the burglary-

committed previously to the killing embraced only express matter affects no issue in the case. It was his duty to protect the railroad company's property. He put guards there in the performance of this duty. In placing them there he made no discrimination between the property of defendants; he merely told them to prevent the burglary and catch the burglar. Railway v. Whitmore, 58 Texas, 287; Railway v. Wilson, 24 S. W. Rep., 686; Railway v. Threat, 34 S. W. Rep., 152.

The contention of Wells-Fargo & Co. is that, under article 3017 of the Revised Statutes, it is in no event liable for an injury resulting in death caused by the wrongful or negligent act of its agent. It also contends that under the pleadings of plaintiffs Wells-Fargo & Co. are not within the statute. Our proposition is that it was not necessary for plaintiffs to plead that Wells-Fargo & Co. were the owner, charterer or hirer of the railroad train or other vehicle in order to be permitted to show it, but that in any event plaintiffs' allegations embraced the idea that it was, and the statute conferring the right to maintain an action for death embraces such corporations as Wells-Fargo & Co. Waters-Pierce Oil Co. v. Davis, 60 S. W. Rep., 453.

The point sought to be made by appellant Wells-Fargo & Co. in its third assignment is that it was not its duty to warn Lipscomb of the danger of approaching the depot, because Lipscomb was not in its employ. Our proposition is that to every person rightfully approaching the depot it owed the duty of not exposing him to such dangers as those to which it exposed Lipscomb. Coombs v. New Bedford Cordage Co., 102 Mass., 572; Oil Co. v. Davis, 60 S. W. Rep., 453.

It being shown by the undisputed evidence that the killing of Lipscomb was the intentional and wrongful act of defendant's agent, and no attempt having been made by either of the defendants, either in their pleadings or proof, to legally excuse the killing, there was no issue for the court to submit to the jury except the amount of damages recoverable. Croft v. Smith, 51 S. W. Rep., 1089; Railway v. Anderson, 17 S. W. Rep., 1039; Railway vs. Donahoe, 56 Texas, 162; Easton v. Dudley, 14 S. W. Rep., 583; Railway v. Griffith, 35 S. W. Rep., 741.

*R. De Armond* and *W. J. J. Smith,* for defendant in error the Houston & Texas Central Railway Company.—The evidence before the jury did not establish, as a matter of law, the liability of the defendant railroad company, and the charge of the court invaded the province of the jury to pass upon the facts, and was on the weight of the evidence, and contrary to all evidence. Rev. Stats., arts. 1316, 1317; Rogers v. Broadnax, 24 Texas, 543; Railway v. Lee, 70 Texas, 496; Denham v. Lumber Co., 73 Texas, 78; Railway v. Greenlee, 70 Texas, 553; Railway v. Kuehn, 70 Texas, 582; Railway v. Donahoe, 56 Texas, 162; Steamboat Co. v. Railway, 24 Conn., 40; and authorities under next proposition.

The undisputed legal evidence before the jury affirmatively showed that the defendant railroad company was not liable to plaintiffs, in that

Moore was not a joint agent, and neither he nor Gatlin was acting for defendant railroad nor within the scope of any authority from it, nor in the ordinary course of their employment. Railway v. Donahoe, 56 Texas, 162; Scott v. Railway, 32 Law. Rep. Ann., 154; Railway v. Cochran, 43 Kan., 225; Isaacson v. Railway, 94 N. Y., 278; Schlopbach v. Railway, 35 S. C., 517; Willis v. Railway, 72 Mich., 160; Allen v. London Railway, L. R., 6, Q. B., 65; Mulligan v. Railway, 29 N. E. Rep., 952; 14 Law. Rep. Ann., 791; Railway v. Gastineau, 83 Ky., 119; Everheart v. Railway, 78 Ind., 292.

If all of the evidence before the jury did not disprove and negative the liability of the railroad company, then there was evidence showing and tending to show that no fact existed upon which the liability of this defendant could be predicated, and the said charge of the court was thereby on the weight of the evidence and unsupported by any evidence. Willis v. Hudson, 72 Texas, 598; Heldt v. Webster, 60 Texas, 209; Ormond v. Hayes, 60 Texas, 182; Willis v. Hudson, 63 Texas, 685.

If the undisputed legal evidence before the jury did not show that defendant railroad company was not liable to plaintiff under any phase of the case, then there was evidence before the jury showing and tending to show that this defendant was not liable under any phase of the case to plaintiff and raising issues of fact as to this defendant's liability, and this defendant had the right to have such issues of fact submitted to and determined by the jury; whereas the court by its said charge withdrew such issues of fact from the jury, and the jury was precluded from passing upon the facts in evidence upon which the liability of this defendant depended; and the said charge of the court was thereby upon the weight of the evidence and deprived this defendant of a trial by a jury, contrary to the Constitutions of the State of Texas and of the United States. Constitution of U. S., amendment, art. 7; Constitution of Texas, art. 1, sec. 15; Rev. Stats., art. 3187; and authorities cited under previous propositions.

If all the evidence did not show that this defendant was not liable to plaintiffs, then the pleadings and evidence raised the issues of fact as to whether J. R. Moore had authority to station armed guards in the depot at Rice at the time of the killing of Engineer Lipscomb, and as to whether it was within the scope of his authority so to do, and as to whether it was within the ordinary duties of the station agent so to do, and as to whether in so doing he was acting for this defendant or solely acting for the defendant Wells-Fargo & Co., and as to whether Gatlin, who shot Lipscomb, was a servant of this defendant in the capacity of night watchman, or solely the servant of Wells-Fargo & Co., or a mere volunteer, and as to whether said Gatlin, if he was a servant of this defendant in any capacity, was acting at the time of the killing in the scope of his authority, if any, and as to whether this defendant had notice of the presence of armed guards in said depot at said time, and as to whether Gatlin acted at the time of the killing with ordinary prudence and care, and as to whether the deceased engineer (Lipscomb)

acted with ordinary care and prudence in the manner in which he approached the depot, and as to whether said Lipscomb exercised, at that time, ordinary care for his own protection, and as to whether said Lipscomb was acting in the line of his duty in going to the depot at said time; and there being evidence before the jury establishing and tending to establish each of said issues in favor of defendant railroad company, the charge of the court was thereby upon the weight of the evidence and adverse to the defendant, and withdrew such issues of facts made by the pleadings and evidence from the jury, contrary to the law and the Constitutions of the United States and of the State of Texas.

There being no law declaring any of the facts in evidence or acts of defendant railroad company negligence per se, the question of negligence vel non of defendant railroad company was a question of fact for the jury, and not of law for the court, and the charge was thereby upon the weight of the evidence and contrary to law.    Railway v. Hanks, 21 S. W. Rep., 948; Railway v. Murphy, 46 Texas, 366; Railway v. Lee, 70 Texas, 496; Denham v. Lumber Co., 73 Texas, 78; Railway v. Greenlee, 70 Texas, 553; Railway v. Kuehn, 70 Texas, 587; Telegraph Co. v. Lydon, 82 Texas, 367; Calhoun v. Railway, 84 Texas, 226; and numerous decisions of the Supreme Court of Texas, cited at bottom of page 503, 1 Sayles' Stats.

The court erred in refusing this defendant's special charge asking the court in substance to instruct the jury to return a verdict in favor of the defendant Houston & Texas Central Railroad Company, in this, that the uncontroverted and undisputed evidence showed that this defendant was not liable to plaintiffs in any event or under any phase of the case. Railway v. Faber, 77 Texas, 153; Washington v. Railway, 36 S. W. Rep., 778; Joske v. Irvine, 44 S. W. Rep., 1059; Sayles' Ann. Stats., art. 1317, note 29; Church v. Railway, 16 Law. Rep. Ann., 861; Sherman v. Railway, 72 Mo., 62; Sagers v. Nuchols, 3 Col. App., 95; Scott v. Railway, 32 Law. Rep. Ann., 154.

That the knowledge of Moore and Gatlin would not be imputed to defendant railroad company, see Smith v. Smith, 55 S. W. Rep., 546; Kaufman v. Robey, 60 Texas, 308; Loan Agency v. Taylor, 88 Texas, 49; Wheeler v. McGuire, 2 Law. Rep. Ann., 808.

The court erred in refusing this defendant's special charge wherein this defendant requested the court to charge the jury that in estimating the damages, if any, they would not consider the fact that deceased, Lipscomb, was a member of the church, in this, that there was evidence before the jury introduced by plaintiffs, over defendant's objection, that deceased Lipscomb was a member of the church and attended as often as he could, and that the fact that deceased was a member of the church was not a proper element to be considered in estimating the pecuniary value of his life to plaintiffs.

The testimony of the witness Francis offered by plaintiff by deposition was incompetent and irrelevant, being the hearsay and opinion of

the witness and not a recitation of the facts within his knowledge, and having reference to agents at stations other than Rice.

The witness Francis did not qualify himself to speak as an expert, and the evidence affirmatively showed that he was not an expert. If the witness qualified himself as an expert in railroading, yet he did not qualify himself in the matter of the duties of a station agent, and the inquiry was not one for expert testimony.

J. R. Moore was not the joint agent of the defendant railroad company and the defendant express company at Rice, Texas, but only the common agent, and the two defendants were, as to said Moore, separate and distinct principals, and the undisputed evidence established this. Scott v. Railway, 32 Law. Rep. Ann., 154.

J. R. Moore had no authority from defendant railroad company to station armed guards in the depot, and it was not within the scope of his authority, nor within his ordinary duties, nor the ordinary course of his business at the time and place of the killing so to do as agent of this defendant. Rogers, Ex. Test., 2 ed., 32; Lawson, Ex. and Op. Ev., 2 ed., 113, 11, 246, 242, 196; McIsaac v. Electric Co., 51 N. E. Rep., 524; 2 Jones on Ev., sec. 374.

The duties, authority and powers of the agent Moore, to and under the defendant railroad company at Rice, Texas, at the time Lipscomb was killed, depended upon the contract between him and the defendant railroad company solely, and not upon the understanding and opinion of the witness Francis, whether he was an expert or non-expert in railroad business, and the said testimony of the witness Francis was irrelevant and incompetent. Lawson, Ex. and Op. Ev., 2 ed., 105, 196; Rogers on Ex. Test., 271, 32; 2 Jones on Ev., sec. 374.

The court erred in refusing to allow this defendant to prove by plaintiff Bettie Lipscomb, while she was on the stand testifying in her own behalf, and while she was being cross-examined by this defendant, that deceased Lipscomb left life insurance in a large sum for the benefit of the witness Bettie Lipscomb and the other plaintiffs, and that the witness Bettie Lipscomb had collected such life insurance, in that the said proposed evidence was relevant and material and proper proof to go before the jury and to be considered, both in estimating the damages, if any, for which this defendant was liable, if liable at all, and in making apportionment between plaintiffs.

In stationing Gatlin and West in the depot at Rice, or in consenting for them to be there as watchmen on the night that Lipscomb was killed, Moore was not acting nor purporting to act for this defendant. and the evidence is undisputed to this effect, and his knowledge that they were there will not be imputed to defendant railroad company.

*Alexander & Thompson,* for defendant in error Wells-Fargo Express Company.—The right to maintain a civil action of this character did not exist at common law, and if any action exists it is purely by virtue of the statute of Texas, article 3017 (2899). Hendrick v. Walton, 69

Texas, 192; Insurance Co. v. Brame, 95 U. S., 754; Eden v. Railway, 14 B. Mon., 204; Whitford v. Railway, 23 N. Y., 465; 2 Thomp., Neg., sec. 72, note 2.

The statutes of Texas, subdivision 1, article 3017 (2899), prescribing a cause of action for injuries resulting in death, can have no application to defendant Wells-Fargo & Co., under the pleadings and evidence, because it was not alleged or shown to be either the "proprietor," "owner," "charterer," or "hirer" of any railroad, train, or other "vehicle" or thing named in the statute and in use on or in connection with the Houston & Texas Central Railway. Statutes of Texas, 1895, art. 3017 (2899); Turner v. Cross, 83 Texas, 231; Burton v. Railway, 61 Texas, 527; Hendrick v. Walton, 69 Texas, 195; Hargrave v. Vaughn, 82 Texas, 348; Monongahela Bridge Co. v. Railway, 114 Pa., 484.

Where the right to recover damages occasioned by death is conferred by statute against certain persons only, the right can be asserted and enforced against such persons and none others, and the courts are not at liberty to expand the statute so as to embrace persons not therein enumerated. Turner v. Cross, 83 Texas, 228; Detroit v. Chaffee, 70 Mich., 80; Dent v. Ross, 52 Miss., 188; Scott v. Simons, 70 Ala., 352; Denn v. Reid, 10 Pet., 524; Sedg. Stat. and Const. Law, 2 ed., secs. 194, 195, 219, 220.

While any corporation will be deemed to be a person, within the meaning of the statute (article 3017), such corporation, unless it be comprised in subdivision 1 of the article, will only be deemed liable for its own wrongful acts or omissions as distinguished from the acts or omissions of its servants or agents. And this defendant, having been charged with no negligence in the employment of an improper agent, nor with a breach of any duty owed to the deceased, it can not be held liable under subdivision 2 of the statute. Fleming v. Loan Co., 27 S. W. Rep., 126; Hargrave v. Vaughan, 83 Texas, 349; Hendrick v. Walton, 69 Texas, 192.

The duty was not owed to deceased (Lipscomb) by Wells-Fargo & Co., to warn him of the danger to be encountered in going to the depot of the railway company, in that the pleadings and evidence do not impose such a duty on the defendant, Wells-Fargo & Co. Because it is clearly shown from the evidence that Lipscomb was an absolute stranger to Wells-Fargo & Co., or any train on which it did business, and was a party whose existence was not known to said company, much less the fact that he was in any jeopardy whatsoever. Railway v. Crum, 6 Texas Civ. App., 703; Sweeny v. Railway, 92 Mass., 372; Shearm. & Redf., Neg., secs. 8, 9, 5 ed.; 1 Thomp., Neg., 303.

WILLIAMS, Associate Justice.—This action was brought by plaintiffs, the widow and minor children of John Lipscomb, to recover damages for the killing of John Lipscomb by persons alleged to have acted in such killing as the servants of the two companies. In the District Court, upon a trial before a jury, a verdict for the plaintiffs against both

companies was directed, the only question left to the jury being as to the amount of the damages. Upon appeal to the Court of Civil Appeals, it was held by that court that the express company was not shown to be one of the classes of persons made liable by the statute for a killing by its servants, and that the railroad company was not made liable for the killing in question by its servants, held to have been an intentional and not a negligent one, without allegation and proof of the unfitness of such servants; and the judgment of the District Court was reversed and the cause remanded. This writ of error was granted upon the allegation in the application of the plaintiffs that the decision of the Court of Civil Appeals practically settled the case against them, and all the questions raised on the appeal are before this court.

The evidence showed that Lipscomb was shot at the station of the railroad company at Rice about 5 o'clock in the morning of October 10, 1899, by one Gatlin, who had been stationed in the building by one Moore, the station agent of the railroad company and the local agent, also, of the express company, to keep watch for and catch burglars. The station had been entered several times and goods in the possession of the express company had been stolen, and Moore, for several nights before the killing of Lipscomb, had kept watch in the station until 12 or 1 o'clock and had caused Gatlin and one West to arm themselves and guard the station for the remainder of the night. His only instructions to them were to catch the burglars. Lipscomb and Davenport were the engineer and fireman, respectively, upon a freight train of the railroad company which was traveling northward through Rice to Ennis. At a point south of Rice the boiler became so impaired as to render it impracticable to carry the train through, and, upon telegraphic orders from headquarters at Ennis, those in charge of it left the cars composing the train at one of the stations and proceeded northward with only the engine and caboose. When Rice was reached, the boiler had failed so that it was impossible to carry it further, and the engine and caboose were carried past the station and backed into the switch north of it. The engineer and fireman then went together to the station to report the condition and get orders, which, according to some of the evidence, was in the line of their duty. Finding the doors of the waiting room locked, they went to the window and made a noise which awakened Gatlin, who, with West, was asleep in the room, and he, mistaking them for burglars, fired his gun at Lipscomb, whom he saw at the window, and inflicted the wounds from which he died. The acts and appearance of Lipscomb and Davenport immediately preceding the shooting are told in detail by the witnesses with some differences, the purpose on the one hand being to show that there was nothing to occasion Gatlin's mistake, and on the other hand, to show that the appearance and movements of the parties were such as to reasonably justify his belief that they were burglars trying to enter the depot, and that, just before he fired, the party at the window, Lipscomb, was preparing to shoot him.

No notice had been given to employes of the presence of armed guards in the station or of any dangers to be encountered in approaching it at night. Some of the evidence tends, however, to show that Rice was not a night office, that the operator was not expected to be there at such hours as that at which Lipscomb went to it, that it was the duty of conductors to attend to such matters, and that the one in charge of this train did not go to this office because he knew the operator would not be there.

Moore was paid a salary by the railroad company for his services to it, and, as compensation for his services to the express company, received a commission upon moneys taken in for it. While he was the common agent of the two companies, he was not employed by them jointly, but his ordinary duties to one were distinct from those due to the other. Whether or not he was authorized to employ guards for such purposes as that for which he secured the services of Gatlin and West, and, if so, whether he in fact employed them in behalf of either or both of the companies and of which one, were disputed questions in the trial.

There was the testimony of one witness, of the admissibility of which we shall treat further on, which tended to show that Moore's authority as station agent embraced that of enlisting the aid of others to guard and protect the station and other property in his charge. Besides this, there was no evidence which went further than to show that it was Moore's duty and that he had the authority, himself, to take care of the property and secure it against depredation; and there was direct testimony that he and other station agents were not empowered to employ extra help for any purpose without the permission of their superiors, which was not obtained in this instance.

Gatlin had previously worked at intervals about the station in handling freight, but was not a regular employe for any purpose, nor was West. They were not hired by Moore, but volunteered their services to aid him in catching the burglars. Nothing was said between the parties to indicate that they were employed for the one company or the other, but their services were simply accepted by Moore in the general way stated, and he assisted them in procuring arms.

The evidence does not show that any of the cars used by the express company belonged to it or that it had hired or chartered any of them or that it had the exclusive actual control of any of them. The cars used by it were in the trains run by the railroad company and were owned, carried, and controlled by the latter company, except that the express company, under contract with the railroad company, had a particular car in the train, or, if its business did not require a whole car, a portion of one, provided for its use, to be occupied by its agent with the matter carried by it. There was no pleading or evidence that this company owned or had chartered or hired any other vehicle. Under the contract, the express company also had the right to receive and store its

goods in the depot building and to have its agent transact its business there so as not to interfere with the business of the railroad company.

We are of the opinion that the Court of Civil Appeals properly held that the pleading and evidence failed to show that the express company was liable, for the reason that it is not made to appear that such company comes within the provisions of the statute giving actions for injuries resulting in death. Rev. Stats., art. 3017.

The first subdivision of the article referred to gives such an action "when the death is caused by the negligence or carelessness of the proprietor, owner, charterer or hirer of any railroad, steamboat, stage coach, or other vehicle for the conveyance of goods or passengers; or by the unfitness, negligence or carelessness of their servants or agents." The express company is not shown to be either one of these. The most that is pleaded and proved is that it had engaged space on cars otherwise wholly controlled by the railroad company, in which goods, in charge of its agents, were transported by the latter company. No sense of any of the words used in this subdivision of the statute would include it. It is true, other provisions of the statute declare express companies to be common carriers, but article 3017 does not create the liability against common carriers eo nomine, but only declares it against the classes named.

The second subdivision gives an action when the death is caused by the wrongful act, negligence, unskillfulness or default of another.

It is held in the case of Hendrick v. Walton, 69 Texas, 192, upon full consideration, that this gives no action against the principal or master for a death caused by the act of the agent or servant; and although it is held in Fleming v. Texas Loan Agency, 87 Texas, 239, that under this subdivision a corporation may be made responsible for a death caused by its own act or omission, this in no way changes the rule stated in the former case. The only contention here is that the express company should be held liable for the act of its servants.

The action must stand or fall by the terms of the statute, which can not be extended to include cases omitted from its provisions. Turner v. Cross, 83 Texas, 218. The plaintiffs have admitted in their application for writ of error, in order to give jurisdiction to this court over a reversed and remanded cause, that they can produce no additional facts to make a case against the express company; and it is therefore the duty of this court to render final judgment in favor of that company.

The railroad company is made liable for a death caused by its own negligence or that of its servants, and the next question is as to the correctness of the holding of the Court of Civil Appeals, as matter of law, that the shooting of Lipscomb was the willful and intentional act of Gatlin, and that therefore the railroad company is not responsible for it. In discussing this question, we shall assume for the present that Gatlin was the servant of the railroad company.

The statute making such company responsible for the negligence of its servants at once brings into consideration the relation of master and

servant and some part, at least, of the common law governing that relation. The master or principal is made responsible for the negligence of the servant or agent—that is, for negligence of the latter happening while they are acting in such capacity. The rule of respondeat superior, to some extent at least, is thus imported by the statute into such cases. As it is established by the better authorities and enforced in this court, that rule does not make the responsibility of the master depend on the question whether an injury inflicted by the servant was willful and intentional or unintentional, but upon the question whether the servant, when he did the wrong, acted in the prosecution of the master's business and within the scope of his authority, or had stepped aside from that business and done an individual wrong. Railway v. Cooper, 88 Texas, 610, and authorities there cited; Haehl v. Wabash, etc., Railway, 119 Mo., 325. There is much authority, however, for the proposition that, under the common law, the master is not liable for the malicious and intentional torts of the servant, although committed while engaged in forwarding the master's business; and it is by no means clear that the rule of respondeat superior as first stated is made to apply in its full force in actions given by our statute for injuries resulting in death. Assuming for the purposes of this case that it does not, and that a killing by a servant which is willful and not negligent is not within the statute, it is still true that if the killing in question can be regarded as a negligent one, there is a case for the determination of the jury under the statute. The servant acts for the master in executing instructions or rendering service. If he does this without the exercise of due care, he is guilty of negligence. The act which he does may be intentional, but if it is done without the observance of precautions necessary to a due execution of his instructions or exercise of his authority, this absence of care makes his act a negligent one. In the present case, Gatlin's instruction was to watch the station and catch burglars. This necessarily involved the exercise of the discrimination necessary in distinguishing burglars from innocent persons, and in making the arrest and determining the degree of force called for by the circumstances. If, through want of proper care, he mistook Lipscomb for a burglar and used a degree of force not justified by the situation, his act may justly be deemed a negligent exercise of the authority derived from his master.

This view is sustained by both classes of authorities just referred to. McManus v. Crickett, 1 East., 67; Croft v. Alison, 4 Barn. & Ald., 590.

In the latter case, the doctrine is thus stated: "If a servant driving a carriage, in order to effect some purpose of his own, wantonly strike the horses of another person and produce the accident, the master will not be liable. But if, in order to perform his master's orders, he strikes but injudiciously and in order to extricate himself from a difficulty, that will be negligent and careless conduct for which the master will be liable, being an act done in pursuance of the servant's employment." In that case, the act of the servant in striking the horses was intentional, but, as it was "injudiciously" done, it was held that it was also

a negligent performance of his duty as servant. It seems to us that this brings the case of a shooting by a servant, which was intentionally done because of mistake resulting from want of proper care in carrying out the master's orders, within the word negligence used in the statute The act is negligent because it is a careless performance of the duty of the servant. We are therefore of the opinion that the Court of Civil Appeals took an erroneous view of this question.

We are also of the opinion that the trial judge erred in directing a verdict for the plaintiff, since there were several questions of fact which the parties had the right to have the jury pass on. One of these was the question whether or not Gatlin was the servant of the railroad company. That Moore was its servant and had the authority to represent and act for it in guarding the depot and the property in it may be conceded. It does not follow that he had authority to employ for it other servants and substitute them in his place. No implication of such power of employment would arise from the mere fact that he himself could have done the things which he engaged them to do. On the contrary, it would have to be proved as a fact that he had received such power from his employer, and whether he had or not was a controverted question upon which the jury would have to pass. Woods' Mast. and Servt., 185. We can not anticipate the evidence upon another trial, but it may be proper also to submit to the jury, among others which need not be discussed, the question whether, if Moore had authority to employ the guards, they were employed in behalf of the railroad company or of the express company only. If it was Moore's duty to the railroad company to do that which he allowed Gatlin and West to do, and if he had authority from such company to so employ them and they were thus discharging a duty which Moore owed to it, the fact that they were not to be paid would not be material.

A distinct ground upon which it is claimed that the railroad company would be liable is that it owed to its servants the duty of giving to the guards such information and instruction as would protect the other servants against danger in going to the station, and also of giving to such other servants warning of the presence of such danger. This is a theory that should have been submitted to the jury, but the facts were not such as authorized the court to declare a liability as matter of law. Whether or not such instructions and warning were called for was a question for the jury and depended upon the further questions, whether or not the presence of other employes and danger to them at the depot ought reasonably to have been foreseen by the company, and whether or not the omission of such precautions constituted negligence of which the shooting of Lipscomb was the proximate result. Railway v. Bigham, 90 Texas, 225; Dawson v. St. Louis, etc., Co., 94 Texas, 424. In determining this issue, the knowledge of Moore that the guards were in the station for the purpose for which they were put there would be treated as the knowledge of the railroad company, whether the guards were its servants or not. He represented the company in keeping the

station, and if a condition of such peril to employes existed there, from any cause, as required him in the exercise of ordinary care for their safety to take measures for their protection, his omission to do so would be the omission of a duty owed by the master to the servants, for which it would be liable.

Many other grounds were urged in the Court of Civil Appeals for the reversal of the judgment of the District Court, of which such as may be of importance in another trial will be considered.

One Francis testified as to the authority and duties of railroad station agents, giving them, in general, as they have been above stated, and added: "In the event the local or station agent at such depot should have reasonable grounds for believing the depot of which he was in charge was about to be robbed or burglarized of freight or express matter, if any therein, or was about to be stolen, he should watch the property himself, and if he thought it necessary, he could hire others to care for and protect it." The form of this statement indicates that it is a mere opinion or deduction of the witness from the duties generally incumbent upon agents, and not the statement of a fact which he had observed or knew. As an opinion, it was not admissible. The evidence indicates that the duties and authority of station agents are largely evidenced by usage rather than by express contract or instructions, and the witness, after testifying that he was familiar with these usages, could properly state, as he did, what powers he had known such agents to exercise habitually; but it was not competent for him to deduce from what he had seen the possession of further powers of the exercise of which he had not known. The question of authority vel non was one of fact to be determined by the jury and not proved by the opinions of witnesses. This will dispose also of the assignments upon the exclusion of answers of Daffan and Smith upon the same subject.

Upon the measure of damages, evidence that deceased was a member of the church and did not use profane language was too remote to be of value in determining the pecuniary loss of plaintiffs.

The court did not err in excluding evidence that plaintiffs had received money upon policies of insurance. This court has heretofore passed upon that question in considering applications for writs of error in the cases of Railway v. Rasberry, 34 Southwestern Reporter, 794, and Railway v. Weaver, 41 Southwestern Reporter, 846, and has held that such evidence is not admissible.

The judgment of the Court of Civil Appeals, so far as it reverses the judgment of the District Court, is affirmed; judgment is here rendered in favor of Wells-Fargo Express Company; and the cause between the plaintiffs and the other defendant is remanded for further proceedings in accordance with this opinion.

*Reversed and rendered in part and remanded in part.*