GALVESTON, HARRISBURG AND SAN ANTONIO RAILWAY COMPANY V. DRS. G. W. ALLEN, SR., AND JR.

Decided April 11, 1906.

**Surgical Services Rendered to Passenger—Agent—Scope of Authority.**

A surgeon who, under contract with defendant's local surgeon, performs services for a passenger injured without fault on the carrier's part, and who was informed at the time that such local surgeon had no authority to make said contract, has no claim against the defendant company.

Appeal from District Court of Fayette. Tried before Hon. L. W. Moore.

*Brown & Lane,* for appellants.—The court erred in permitting plaintiffs' attorney to read, in the presence and hearing of the jury, the report of the case entitled Galveston, H. & S. A. Ry. Co. v. Neel from the 26 Southwestern Reporter, page 788. Mathews v. Thatcher, 76 S. W. Rep., 61; Bilo v. Fuller, 84 Texas, 450; Missouri Pac. Ry. v. Lamothe, 76 Texas, 223; Galveston, H. & S. A. Ry. v. Wesch, 85 Texas, 600; Western U. Tel. Co. v. Teague, 8 Texas Civ. App., 444.

Plaintiffs having brought their action to recover by reason of an express contract which they alleged was made between them and the defendant company, it acting in the making of same through certain of its agents, and the proof wholly failing to show the authority of said agents to make such contract and there being no proof to sustain the allegations on the part of plaintiffs, it was the duty of the trial judge to instruct the jury to return a verdict for defendant.

It is an undisputed fact proved by the evidence in this case that in the $150 item sued for plaintiff, G. W. Allen, Jr., had no interest, and that any recovery had on account thereof would belong exclusively to plaintiff, G. W. Allen, Sr. It is an elementary proposition of law that "persons having distinct claims against the same defendant, can not make one suit the vehicle for carrying all their demands into judgment. Their recovery is limited to what concerns them jointly." Black on Judgments, vol. 1, sec. 145, p. 163; Sayles & Bassett's Pl. & Pr., sec. 278; Townes on Texas Pleading, p. 205; Texas & Pac. Ry. Co. v. Gill & Beauchamp, 2 Texas App. Civil Cases, sec. 175, p. 151.

Persons dealing with an assumed agent, whether the agent be a general or special one, are bound at their peril to ascertain, not only the fact of the agency, but the extent of his authority; and in case either is controverted, the burden is on them to establish it. Baker v. Kellett, Chatham Co., 11 Texas Ct. Rep., 946.

There can be no binding ratification without full knowledge. Reese v. Medlock, 27 Texas, 124; Commercial Bank v. Jones, 18 Texas, 820; Wills v. International & G. N. Ry. Co., 14 Texas Ct. Rep., 160.

*J. F. Wolters* and *J. T. Duncan,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellees on September 3, 1904, against appellant to recover the sum of sixteen hundred and fifty dollars. The allegations in plaintiffs' petition, upon which the recovery is sought are substantially as follows: . That on the 22d day of March, 1904, the defendant acting through its local surgeon, Dr. Johnson, and through its agent, Mr. Meyers at Flatonia, employed and engaged plaintiffs to perform a surgical operation upon Barton E. Gardner, a young man whose right leg and left foot had been crushed by one of defendant's trains. That in accordance with the instructions and requests of defendant's local surgeon, who, in such matters was its duly authorized agent and representative, and in accordance with the instructions and request of its agent, Mr. Meyers, plaintiffs had the injured man brought to their hospital where they amputated his right leg and left foot. That the operation was requested to be performed by Dr. Johnson, the local surgeon, in whose judgment it was absolutely necessary that the amputation of Gardner's leg and foot should be made. That plaintiffs and also Dr. Kaiser, another local surgeon of defendant, concurred in the judgment of Dr. Johnson. That Dr. Johnson administered the chloroform to the patient, while Dr. Kaiser held the limb, during the operation. That the plaintiff Dr. G. W. Allen, Sr., with his surgical instruments amputated both the right leg and the left foot, while the plaintiff, Dr. G. W. Allen, Jr., performed the other duties necessary in order to properly perform the operation. That after the operation was performed, the patient was kept in the hospital of plaintiffs for twenty-one days and then discharged as convalescent.

That the services of the plaintiffs were requested by the defendant through its proper local agent, and that by said employment the defendant agreed and became liable to pay plaintiffs the sum due for the performance of the operation, and for the board, hospital fees, attention and nursing required after the operation until the patient was discharged. That the operation is reasonably worth the sum of $1,500; and the board, attention, nursing and hospital fees the sum of $150, aggregating $1,650.

The defendant answered by a general demurrer, a general denial and, specially, as follows: "Defendant denies that it or any of its agents for it having authority to do so, either employed, or contracted with plaintiffs for the services alleged in their petition; that Dr. Johnson and Mr. Meyer, are not and never have been authorized or employed by defendant, or any of its officials having power to do so, to make contracts of the nature alleged by plaintiffs; that Dr. Johnson, Mr. Meyer and H. F. Anderson were not, nor was either of them ever, at any time authorized and empowered by defendant to engage and employ plaintiffs as alleged in their petition; that if Dr. Johnson, Mr. Meyer or H. F. Anderson, or either of them, employed and engaged plaintiffs

as alleged by them in their petition, then their acts or the acts of either of them, were and are beyond the scope of their authority, or the authority of either of them, and not binding on the defendant."

The special answer above shown was duly verified.

The case was tried before a jury, who returned a verdict in favor of plaintiffs for $575, upon which the judgment appealed from was rendered.

*Opinion.*—As necessary to the consideration of the assignments of error, we deem it proper to say that the uncontradicted evidence shows that on March 22, 1904, Barton E. Gardner, a young soldier of the U. S. Army, who was a passenger, got out of one of appellant's trains standing at the depot at Flatonia, and in some way (presumably by being run over by the train) had one of his legs and a part of one foot crushed. No responsibility or liability is shown, or claimed by appellees, of the appellant for the act which resulted in the injury of the young man. He had been a passenger, had in some way left the train, and was simply found in his injured condition at appellant's depot in Flatonia. No facts appear that tend to show primarily that the law imposed upon the railway company any duty or obligation to give the young man, or any one else, found in his condition at its depot, under the same circumstances, surgical aid or treatment, or to care for him while recovering from his injuries. That if any such duties rested upon appellant they were self-imposed by contract, as claimed by appellees in their petition.

With this preliminary statement in view, we will consider the assignments of error.

1. The subject of the second assignment of error is the refusal of the court to give special charge No. 1, requested by appellant's counsel, which is as follows: "No evidence has been introduced that would authorize you to find the defendant company liable to plaintiffs, nor is it claimed that there is any liability except upon an express contract made between plaintiffs and defendant company; and upon this branch of the case, you are instructed that plaintiffs can not recover of defendant, unless the testimony offered shows an express contract made between plaintiffs and the defendant company by some one on the part of the company having authority to make such a contract; and inasmuch as no testimony has been introduced which shows such authority, you are directed to return a verdict for defendant."

The assignment is followed by this proposition: "Plaintiffs having brought their action to recover by reason of an express contract which they alleged was made between them and the defendant company, it acting in the making of same through certain of its agents, and the proof wholly failing to show the authority of said agents to make such contract and there being no proof to sustain the allegations on the part of plaintiffs, it was the duty of the trial judge to instruct the jury to return a verdict for defendant."

It will be observed from our statement of the allegations in plaintiffs' petition that it grounds their cause of action on an express contract, alleged to have been made by defendant, acting by or through its authorized agents. No liability is claimed to flow from an implied con-

tract or a tort of any kind, or to have arisen from a ratification of acts or doings of any agent or agents of the railway company.

It is elementary that an agent can not bind his principal by a contract unless he have authority from his principal, express or implied, to make such contract for him, or it is within the scope of the agent's apparent authority to make such contract, and the party seeking to establish and enforce it made the contract relying upon the apparent authority of the agent to make it for his principal. For though it may be within the scope of the apparent authority of the agent to make such contract for his principal, yet if it is only apparent and beyond his real authority and the other party knows or has·reason to suppose, that such contract exceeds the agent's authority, he can not found an action against the agent's principal upon it. A man can not act on appearances which he knows or has reason to believe are false, and thereby impose a pecuniary obligation upon another.

There was evidence that Dr. R. A. Johnson, defendant's local surgeon at Flatonia, did employ the plaintiffs to perform the surgical operation on Gardner and that, as alleged, it was performed by them. The testimony is undisputed that Johnson was wholly unauthorized by appellant to make such a contract, or to contract with anyone on behalf of appellant to perform surgical services. M. V. Meyer, appellant's station agent had no such authority, and it is evident that it is not within the scope of the apparent authority of a railroad station agent to make such kind of a contract. The plaintiff, Dr. G. W. Allen, Sr., testified: "At the time Dr. Johnson didn't say for certain that he had authority to employ—he didn't say whether he had or not; that he was going to get Knox, the chief surgeon of the railway company, to endorse his action. He said he was going to arrange it through Knox. He said: 'I will telegraph to Knox and tell him what I have got to do,' and he said he was going to have Meyer telegraph the superintendent of the railroad, and he would give me to understand everything would be all right, and I went into it, thinking I was going to get my money. I understood from the conversation that Dr. Johnson had doubts about his authority at the time, but I understood that he would make it right."

H. F. Anderson testified: "I remember the accident to the young man Gardner near Flatonia. At that time I was assistant superintendent and Mr. W. B. Scott was superintendent. I received a telegram about this accident, it was addressed to Mr. Scott, and I replied to it. Witness was then handed a telegram which he identified as the one sent by him, and stated: 'That telegram I sent in reply to one I received giving me information about this matter; I knew the company had company physicians at Flatonia; I addressed that telegram to the agent, and by saying: Please see company· doctors, I meant for the agent to see the company's physicians at Flatonia, who were Drs. Johnson and Kaiser. It was Drs. Johnson and Kaiser that I instructed the agent to refer the matter to. I had no authority to employ any physician outside of them, and I would not undertake to do so.'"

There is nothing in the testimony of Dr. G. W. Allen, Jr., to indicate that he was employed by any agent of the railway company. From his testimony, it would seem that he based his employment upon a prescriptive right, because he thought his father was employed. For he

testified: "I was employed in this case from the fact that it was a surgical case and I knew I was interested in it—my father and I were as one. If the railroad company employed my father in a case of surgery, it was necessary that I impose on them by putting myself into the case; my father and I were surgeons together. I would not let anybody cut me out of a case, and would not let a man do without my employment if he wanted to, unless there was some enmity or something of that nature. The understanding is that if they employ either my father or myself they employ both of us. I considered I was employed, having had a conversation with Dr. Johnson and naturally on account of my father." It will be here observed that while it may be, "necessity knows no law," it is certain that the law *knows no necessity,* for a young doctor regarded as being employed in a case of surgery because of the employment of his father. The plaintiffs did not sue as partners, but upon an express contract of employment of each by the railway company.

Dr. R. A. Johnson, appellant's local surgeon at Flatonia testified: "I told Dr. Allen" (Senior) "that I was satisfied that the railroad would pay a reasonable fee, and he replied: 'All right, if you can stand it, I can stand it.' I further told him that the railway company would not pay an exorbitant fee; that I had no authority from the railroad company to make any contract at all, and that he might have to do his work for nothing, but that I was satisfied from my association with the railroad for ten or fifteen years that they would pay a reasonable fee. I gave Dr. Allen to understand that, regarding his pay for his work, he would have to take his chances with the balance of us."

M. V. Meyer, appellant's station agent, testified: "I remember the occurrence of Gardner getting his legs mashed. At the time I was station agent for G. H. & S. A. Ry. Co., at Flatonia. . . . The first telegram was the one I sent to the superintendent and then I received a telegram from him which reads: "San Ant. 3-22, 1904. To M. V. M., Flatonia. Please see company doctors and ascertain if they advise the injured soldier be brought to Gov't hospital at San Antonio on No. 9 if he is in condition to move soon. No. 9 is on time. Please see that this man has every attention. H. F. H.' I notified the company doctor of the contents of that telegram, I had no authority to state it to anybody else. The message reads: 'See company doctors.' I replied to that telegram saying: 'Company doctors advise will perform operation here and patient will not be able to go to San Antonio on No. 9.'"

Dr. R. W. Knox testified: "I am chief surgeon for the G. H. & S. A. Ry. Co. I heard of the accident to young Gardner on the night of its occurrence, I think about one o'clock. I received a message from Flatonia from Dr. Johnson, stating that a young soldier had jumped out of a Pullman car window, and gotten under the wheels of the train and both legs crushed, and asked me what to do. I instructed Dr. Johnson to give him the necessary attention until he could be moved to San Antonio. The next day, March 22, I made arrangements for the man at the government hospital, and on the same day wrote Dr. Johnson that we had made the arrangements, and that as soon as he thought it advisable for the man to be moved, to move him. I received a reply from Dr. Johnson saying that the young man preferred to stay in

Flatonia. Dr. Johnson had no authority whatever to employ other physicians for the G. H. & S. A. Ry. Co. If Dr. Johnson thought it was necessary to have the operation performed, it was within his province to perform it. That was what he was employed for. Dr. Johnson had no authority to employ another doctor, if for any reason he wanted assistance; he had no authority, and it was not within the scope of his authority to employ another doctor, in order to save the man, even if he needed such other doctor's assistance. Dr. Johnson did not advise me within a short time thereafter that he had employed Dr. Allen. I never knew that Dr. Allen was employed in this case until his bill was received."

If it should be conceded that either Dr. Johnson or M. V. Meyer or both, assuming to act for appellant, made the alleged contract with appellees, this testimony shows conclusively that neither of them had authority, express or implied, to make such a contract in behalf of the appellant, and that Dr. G. W. Allen, Sr., knew, or was put upon notice of the fact that Dr. Johnson had no authority to make such contract for the railway company.

It is settled law that whoever deals with an agent is put upon his guard by the very fact, and does so at his risk. It is his right and duty to inquire into and ascertain the nature and extent of the powers of the agent, to determine whether the act or contract about to be consummated comes within the province of the agency and will or will not bind the principal.

The appellees, or at least Dr. Allen, Sr., the only one with whom there was the slightest evidence of anything tending towards a contract, "understood from the conversation, that Dr. Johnson had doubts about his authority at the time." This understanding must have arisen from Dr. Johnson's telling him that "he had no authority from the railway company to make any contract at all and that he might have to do the work for nothing," as testified by Johnson, which testimony is neither disputed nor denied.

It is not claimed, nor is there a shadow of a pretext for such a claim, that it was within the scope of Dr. Johnson's authority to employ a surgeon or surgeons to operate and take care of the wounded man. That was Johnson's duty as a surgeon. And it can no more be said that it is within the scope of the apparent authority of a local surgeon of a railway to employ another surgeon to do his duty than it can be be said that it is in the apparent scope of a station agent's authority to employ another man as a station agent to perform the duties intrusted him.

Therefore the requested charge, should, under the undisputed evidence, have been given peremptorily instructing the jury to return a verdict for the defendant.

As the case was fully developed, and no theory can be deduced from the evidence upon which plaintiffs would be entitled to recover, it becomes our duty to reverse the judgment and render judgment for the appellant.

This renders it unnecessary for us to consider any other assignment of error. Reversed and rendered for appellant.

*Reversed and rendered.*

Writ of error refused.