### GRIFFIN et al. v. PHILLIPS PETROLEUM CO.

No. 3928.

Court of Civil Appeals of Texas. El Paso.

March 14, 1940.

Rehearing Denied April 11, 1940.

Second Motion for Rehearing Denied April 25, 1940.

Gordon Griffin and B. D. Kimbrough, both of McAllen, for appellants.

Don Emery and R. L. Foster, both of Bartlesville, Okl., E. H. Foster, of Amarillo, and Hill, Greer & Franki, of Mission, for appellee.

PRICE, Chief Justice.

This case was filed in the District Court of Hidalgo County by Griffin and Kimbrough, as plaintiffs (appellants here), against Phillips Petroleum Company, as defendant (appellee here). Appellants sought to recover the sum of $275 for services rendered appellee in connection with the obtaining for appellee of an oil and gas lease from E. M. Card and wife on certain land in Hidalgo County. Issue was joined in the case and the trial was before the court without a jury. Judgment was for the defendant and the plaintiffs there duly perfected appeal.

There is here no question raised on the pleadings, and it is unnecessary to summarize same. Suffice it to say, that all questions discussed herein are issues under the pleadings. On motion of appellants the court filed findings of fact and conclusions of law. These findings sufficiently state the nature and result of the case, and are here copied.

"Findings of Fact.

"I find that for several days prior to October 25, 1938, the Phillips Petroleum Company acting by and through its agent and representative, J. H. McLaren, carried on negotiations with Mr. E. M. Card and his wife, Birdie Barrett Card, concerning the lease of the Card homestead for oil and gas exploration to said company; and that Mr. B. D. Kimbrough, one of the plaintiffs, being a member of the firm of Griffin & Kimbrough, engaged in the practice of law in McAllen, Texas, acted as counselor and legal adviser to Mrs. Birdie Barrett Card during such negotiations.

"On or about the 25th day of October, 1938, during such negotiations, the said McLaren made certain definite proposals concerning the terms and compensation of certain proposed lease, which proposals were not acceptable to said Birdie Barrett Card; and that Mr. Kimbrough was absent from the county during the 26th of October, but was present in the county in the early morning and throughout the day of the 27th of October, and that during his absence the said McLaren had sought to continue the negotiations with said Cards, and particularly with Mrs. Card, but that she had demurred and refused to carry on the negotiations in the absence of her attorney, Mr. Kimbrough; and in the early morning of the 27th, Mr. McLaren had a telephone conversation with Mr. Kimbrough wherein McLaren sought to carry on the negotiations; and, at which time, Mr. Kimbrough evidenced a reluctance to carry on the negotiations further, stating as his reasons therefor that if he had to spend further time on the matter, his client would not be able to pay him a fee commensurate with his services and either he would be inadequately compensated therefor, or his client would be charged more than she was able to pay; whereupon, said McLaren stated in substance to said Kimbrough that if they could obtain a lease on the property in question, his company would be willing to pay a commission to Mr. Kimbrough; and, thereafter, during the same day, the negotiations went on between the said McLaren as representative of the company, and Mr. and Mrs. Card, acting by and with the advice of their counsel, Mr. Kimbrough, at Mr. Kimbrough's office, and a lease was executed and delivered by the Cards in favor of the company for a consideration considerably larger than had been theretofore offered by the company. And during

the final negotiations, when the Cards demanded a larger cash bonus and oil payments, the said McLaren, in the presence of Mr. Kimbrough, called up a representative of the Company at Mission, Texas, and obtained permission to meet the more onerous terms.

"J. H. McLaren was employed by the Phillips Petroleum Company in the capacity of what is generally known as a land man, and his compensation was by a salary; and it was his duty to negotiate with land owners for the leasing of their properties for oil and gas exploration. As to what limits may have been placed upon his authority, the record is silent; but the fact that he frequently referred matters back to other representatives of the company for approval would indicate that he had limitations on his authority.

"Before the consummation of the lease, Mr. Kimbrough explained to Mrs. Card that the company had offered to pay him a commission on the lease and informed her that in consideration thereof he was charging her a smaller fee for his services than he would otherwise have charged. Mr. Card was not apprized of this matter until this suit was brought, but stated that, while he would not approve of an attorney representing him receiving compensation from adverse parties, that, however, where the matter was fully understood by all parties, he would not object to a lessee paying part of the compensation due his attorney where it was, in effect, merely paid and received in the nature of additional consideration for the lease."

"Conclusions of Law.

"(First) The undertaking on the part of Mr. Kimbrough to assist in bringing the parties to a final agreement, and to accept a commission from the company therefor, after making a full disclosure to his client whom he continued to represent, was not contrary to public policy.

"(Second) The offer made by McLaren to Kimbrough to pay a commission on the lease was not expressly made as an additional inducement or increase in bonus to the lessors, but was offered more in the nature of an ordinary brokerage; however, it will not be presumed that the same was made corruptly, but rather it was made on the assumption that a full disclosure thereof would be made by Mr. Kimbrough to his clients, which, in fact, Mr. Kimbrough did, as hereinbefore stated.

"(Third) Mr. McLaren was without authority to employ brokers on a commission basis to do the very thing which he was employed on a salary basis to accomplish for the company; and the company, by employing Mr. McLaren on a salary basis to represent it in carrying on negotiations for oil and gas leases with land owners, did not thereby empower or authorize said McLaren to delegate his duties to others, and did not authorize or empower the said McLaren to employ brokers or attorneys to represent the company on a commission basis to accomplish that which the company was seeking to achieve through a salaried agent."

In our opinion, these findings are sustained by the evidence, and we adopt same as our own. Supplementary thereto we find that under the terms of the lease negotiated Mr. and Mrs. Card received as bonus the sum of $2,758 in cash and were to receive $2,758 out of the production of oil on the property in question.

Determinative of this case is a correct solution of the issue as to whether McLaren had actual or implied authority from appellee to employ appellants. It can make little difference whether he employed them to aid appellee in acquiring the lease or as its attorneys.

Under the findings McLaren was a salaried field agent of appellee employed in soliciting oil and gas leases for appellee on terms it authorized. His superiors at the times relevant herein had established a temporary office at Mission, about eight or ten miles distant from McAllen, where the transaction involved here took place. There is no evidence as to the ratification by appellee of McLaren's action in employing appellants.

It is established by the evidence that McLaren was the general agent of appellee in the sense that he was continuously employed to perform a series of transactions with various persons. As has been said, he was employed to solicit and obtain oil and gas leases for appellee in the neighborhood involved herein. If he had authority to employ agents or attorneys for appellee to aid him in the discharge of his agency it must be inferred from the nature and character of the particular agency involved herein. There is no evidence that appellee had held him out as possessing authority beyond that which he actually did possess or such as should be reasonably inferred from his agency.

There is no evidence that at any time prior to the incident in question that McLaren had ever employed an attorney for appellee. It is not in evidence that it was usual and customary for agents such as McLaren to do this for their principal.

Unless it appears from a clear preponderance of the evidence that McLaren had actual or implied authority to employ appellants as attorneys for appellee to draw a lease acceptable to appellee and Mr. and Mrs. Card and did so employ appellants, the judgment of the trial court should be affirmed.

The general principles involved are clearly and forcibly stated by Judge Wheeler in the case of McAlpin v. Cassidy, 17 Tex. 449, 450. It is there said, "Every agency carries with it, or includes in it, as an incident, all the powers which are necessary, or proper, or usual, as means to effectuate the purposes for which it was created, and none other. In this respect there is no distinction, whether the authority given to an agent is general or special, express or implied." It does not follow from the fact that McLaren was employed to transact certain business for appellee that he had the power to employ another to aid him in the transaction of the same business. Lipscomb et al. v. Houston & T. C. Ry. Co., 95 Tex. 5, 64 S.W. 923, 55 L.R. A. 869, 93 Am.St.Rep. 804.

The burden of one dealing with an agent is to ascertain at his peril the nature and scope of the authority of such agent. Galveston, H. & S. A. Ry. Co. v. Allen, 42 Tex.Civ.App. 576, 94 S.W. 417, writ refused; Dawson & Young v. Nunn & Latham, Tex.Civ.App., 200 S.W. 603; United States Cold Storage Co. v. Richards, Tex. Civ.App., 99 S.W.2d 697.

We are of the opinion that from the nature and character of the acts performed by the agent McLaren for the appellee it is not to be conclusively inferred that he had the authority to employ an attorney for appellee to assist him.

In this case, to say the least, we think it was an issue of fact. Further, we are of the opinion that under the evidence no such emergency existed as would enlarge the authority of the agent McLaren to bind appellee on the contract of employment here involved. His situation shows that his principal was easy of contact.

The judgment of the trial court is affirmed.

On Rehearing.

In the motion for rehearing appellants urge that there was error in our holding that it was incumbent upon plaintiffs, in order to recover, to establish that the employment of plaintiffs was in the actual or implied authority of defendant's agent. In substance, the contention is that if it was in the apparent authority of such agent, that appellants would have been entitled to recover. Suffice it to say, that the issue of apparent authority was not in the case. Apparent or ostensible authority is founded on estoppel. Continental Oil Co. v. Baxter, Tex.Civ.App., 59 S.W.2d 463.

In the case last cited, in our opinion, Judge Funderburk distinguishes and explains the case of Cox, Inc. v. Humble Oil & Refining Co., Tex.Com.App., 16 S.W.2d 285. If plaintiffs relied on the apparent authority of defendant's agent, it was incumbent upon them to plead same. Continental Oil Co. v. Baxter, supra.

There is an absence of any such allegation in plaintiffs' petition.

Motion overruled.