Houston & Texas Central Railroad Company v. Thomas C. Bryan.

Decided February 4, 1910.

1.—Railroad—Personal Injuries—Collision with Cars on Side Track—Negligence—Evidence.

In a suit by a locomotive engineer against a railroad company for damages for personal injuries caused by a collision of his engine with cars which were upon a side track but too near the main track for the engine to clear, evidence considered and held sufficient to support a finding by a jury that the cars upon the side track were so manipulated and moved by defendant's employees, notwithstanding they testified to the contrary, as to cause them to run down too near the main track and so bring about the collision; that the acts of said employees on and about said cars were within the scope of their employment; and that the evidence did not raise the issue of the cars having been tampered with by some one not in the defendant's employment.

2.—Same—Contributory Negligence—Imminent Danger—Charge.

Where a locomotive engineer was injured while attempting to leave the cab of his engine in view of an imminent collision, and the issue being whether or not he was guilty of contributory negligence in so doing, the court charged the jury as follows: "In determining the question whether plaintiff was guilty of negligence either in attempting to leave the engine, or in the manner in which he attempted to leave it, or in not remaining in the engine, you will consider what a man of ordinary prudence would have done in view of the danger under the circumstances." Held, not subject to the objection that it was upon the weight of the evidence.

Error from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Baker, Botts, Parker & Garwood* and *A. L. Jackson,* for plaintiff in error.

*Lovejoy & Parker,* for defendant in error.

McMEANS, Associate Justice.—Thomas C. Bryan brought this suit against the Houston & Texas Central Railroad Company to recover damages on account of personal injuries sustained by him, and on a trial before a jury recovered a judgment for $26,000, from which defendant has prosecuted this appeal by writ of error.

Plaintiff alleged that while he was in the service of defendant in the capacity of locomotive engineer, and engaged in running a passen-

ger train, his engine came in collision with cars standing on a side-track in defendant's yards at Hearne; that said cars were caused to move into close proximity to the main track so as not to be in the clear of the approaching locomotive and passenger train, and that plaintiff as a result of the collision received the injuries for which he sued.   Liability is predicated upon the negligence of defendant in the following particulars:

"That said injuries were directly and proximately caused and occasioned by the negligence and carelessness of the defendant, its agents, servants and employes, in this, to wit: That they knew, or by the exercise of ordinary care could and would have known, that said passenger train on which plaintiff was engineer would arrive at Hearne at said time and at or about the time that it did arrive, and that they negligently and carelessly, and without the use of ordinary care and caution, backed, knocked and kicked the cars then and there on said switch track towards the main track, or negligently permitted same to roll back, so that they came in contact and collided with said passenger train as it was moving over said main line, causing the injuries aforesaid.

"That it was the duty of defendant, its agents, servants and employes, to use ordinary care in moving and handling the cars upon said switch track to prevent same from running so close to the main line as to come in contact with the passenger train, as aforesaid; that they negligently failed and omitted to use ordinary care in said respect, and that, had they done so, said injuries would not have occurred."

Defendant answered by general denial and by pleas of assumed risk, unavoidable accident and contributory negligence.

Appellant's first assignment of error complains of the refusal of the court to give to the jury its special charge No. 1, in which it was sought to have the jury instructed that, under the law and undisputed evidence, the plaintiff was not entitled to recover.   This charge was correctly refused if there was any testimony which warranted the jury in finding a verdict for the plaintiff.   Defendant contends that the evidence shows that the dangerous position of the cars on the sidetrack resulted from causes and agencies beyond the defendant's knowledge and control, and that the casualty could not reasonably have been foreseen by those in charge of the yard and the movement of the cars therein, as likely to ensue from the movement of the cars as actually made by them, and that there was, therefore, no actionable negligence on the part of defendant in the particulars alleged.   This contention necessitates a finding by us of conclusions of fact based upon the evidence in the record.

On the night of plaintiff's injury he was on his regular run, operating an engine drawing a passenger train on defendant's railroad. A short distance south of Hearne the speed of the train was reduced to about fifteen miles per hour owing to the existence of a bridge there which defendant required should not be crossed at greater speed.   After passing the bridge about one-fourth of a mile, the train, still running at the rate of about fifteen miles per hour, reached the south end of defendant's yards at Hearne.   When within some three hundred feet of the switch leading on to what is known as

track No. 1, at the southern end of the yards, plaintiff discovered what appeared to him to be a long string of cars standing on track No. 1, none of which were sufficiently close to the main line, upon which his engine was running, to interfere or collide with his engine or train. The nearest car to him appeared to be about two car lengths north of the switch. When within 100 or 150 feet of the switch some of the southernmost cars on track No. 1 began to move south toward the switch, starting with a bound as if set in motion by a locomotive, and gradually decreasing in speed until they collided with plaintiff's engine. When plaintiff saw the cars were in motion he immediately applied the emergency brake, and did all that he could to stop the train, but, seeing that a collision was unavoidable, and believing that the nearest car would reach a point on the sidetrack where it converged toward the main line, so as to strike the engine cab where he was, and believing that to remain there would be perilous, he, in an endeavor to safeguard himself, attempted to pass through the front door or window of the cab out on the engine running-board. Just at this time the collision occurred, and plaintiff was afterwards found upon the ground about a car length south of the locomotive, grievously hurt. The engine cab was knocked off by the force of the collision, but the fireman, who remained in the cab, was not injured. The collision occurred at about fifteen minutes after two o'clock in the morning.

The cars which collided with the engine composed a part of a freight train which reached Hearne from the south between 9 and 10 o'clock on the night of the casualty. This train had been placed on track No. 1, and the engine drawing it and the caboose at the rear end had been removed, leaving the south end of the train about two car lengths, or sixty feet, from the switch connecting this track with the main line. Before the freight train reached Hearne the trainmen had inserted an emergency knuckle in the front drawhead of the fifth car from the last, in the place of a regulation knuckle, which had became disabled en route, and Hearne being a division terminal where the defendant maintained car repairers and inspectors, it was the duty of these employes to replace the regulation knuckle before the car could proceed further. The car in question was a "through" car, and was to be forwarded northward in another train which was to leave Hearne about 6 o'clock the next morning. When the freight train arrived at Hearne the conductor reported to the yardmaster and to the repairer, Purifoy, that the emergency knuckle was in the drawhead, whereupon Purifoy procured a regulation knuckle and laid it on the drawhead where the emergency knuckle was, preparatory to inserting it when that car should be separated, by the switch crew operating in the yard, from the other to which it was coupled. The drawheads or couplers worked automatically, and to effect an uncoupling it was only necessary to raise a lever at the end of the car, and this pulled a pin which, as long as it was in place, prevented the cars from becoming uncoupled, but after the pin is raised the cars would not then be separated until the power of the engine is applied to force the cars apart. Purifoy directed the yardmaster to separate the cars so that he could remove the emergency knuckle and replace it with one of the

regular kind, and the yardmaster directed the switch foreman, Mene-fee, to make an opening for that purpose when convenient. It appears that the pin which secured the coupling in the car where the emergency coupling was had been raised at some time before the collision, and that sufficient force had been applied, not only to make the separation, but to cause that car and the four on the south of it to run toward the switch a sufficient distance, and sufficiently close to the main line, to collide with the incoming passenger engine; but there is no affirmative evidence showing who removed the pin or when this was done. The yardmaster, the switch foreman, the switchman, and the inspector Purifoy, each testified that he did not remove it. These witnesses, except Purifoy, testified that about twenty or twenty-five minutes before the passenger train arrived they went in on track No. 1 for the purpose of making an opening between the cars at a crossing. At this time they knew the passenger train would soon be in. The crossing was just north of the ninth car from the southern end of the string. They testified that, to "cut" the crossing, they coupled on to the north end of the string of cars on this track, and that the switch engineer then brought his engine back against the cars with only sufficient force to take up the slack so the pin could be drawn from the coupling of the car first south of the crossing, and that the engine then went to the northern end of the yard, and had made several switches before the collision occurred. Menefee, the foreman, testified that before making the opening for the crossing he set the brake on the first car left south of the crossing, and that this was sufficient to hold the nine cars on the nearly level track where they were, assuming that all the cars remaining were coupled. All of the defendant's witnesses denied knowledge of the uncoupling of the cars at the point where the emergency coupling was. Purifoy testified that he was not present when the collision occurred, having gone off duty at 12 o'clock, and that he had directed another inspector, Belcher, to insert the regulation knuckle when the cars should be separated for that purpose. The foreman, Menefee, testified that while setting the brake on the car at the time of opening the crossing, he heard Purifoy tell Belcher to put in the knuckle, and that this was twenty or twenty-five minutes before the collision occurred. Belcher did not testify on the trial. While all of defendant's witnesses who were questioned on the subject testified that it was the duty of the switch crew to uncouple and separate the cars, and that the car repairers had no authority to do any part of such work, and that it was the exclusive duty of the repairers to insert the knuckle after the cars had been separated, we think the evidence warrants the conclusion that the act of uncoupling and separating the cars and the insertion of the regulation knuckle were parts of a general scheme looking to the general movement and repair of cars, and that the uncoupling, if done by a repairer, was to the end that the separation and repair be made, and was in the line of his general employment and in furtherance of the defendant's business.

From the foregoing, we think that the jury had the right to conclude, and were warranted in believing, that plaintiff was not guilty of any negligence or contributory negligence precluding his right of

recovery; that the employes of defendant to whom it entrusted the management of its yards and cars at Hearne, knowing that the passenger train would soon arrive, withdrew the coupling pin from the coupler of the car where the emergency knuckle was, without securing the cars between that point and the switch; and, for the purpose of making the separation at that point, or for separating the cars at the crossing, applied such force by the switch engine as to cause the cars to run down to the place of collision; and that this was done by the switching crew and in such proximity, in point of time, to the arrival of the passenger train that the cars had not ceased moving at the time of the collision.

This conclusion is strengthened by the facts, first, that, although the crossing was blocked by the freight train from between nine and ten o'clock in the evening, it was not attempted to be opened, according to the testimony of defendant's witnesses, until about two o'clock in the morning, when the necessity for the opening could not have been so urgent as it was in the earlier part of the night; second, that the separation of the cars to allow the insertion of the knuckle had to be made so as to allow this to be done in time for the car to be incorporated in a train due to leave Hearne at six o'clock; third, that at the time of opening the crossing the matter of inserting the knuckle, after the separation for that purpose had been made, was discussed by the car repairers in the hearing of the foreman, Menefee, whose duty it was to separate the cars; fourth, the time was opportune, and the means and agencies for effecting the separation were at hand; fifth, the cars were uncoupled at the place where the emergency knuckle was, and the five cars south of that place were set in motion so near, in point of time, to the arrival of the passenger train as to be still in motion when the collision occurred.

We further conclude that the jury might also have believed that the pin was withdrawn by a car repairer. If they did so believe, we think that the evidence leaves no room to doubt that, in withdrawing the pin, the repairer was performing an act in the line of his duty and within the scope of his general employment and in pursuance of the defendant's business. Galveston, H. & S. A. Railway v. Currie, 100 Texas, 136; Burnett v. Oechsner, 92 Texas, 588; Lipscomb v. Houston & T. C. Ry., 95 Texas, 19.

We conclude, finally, that the evidence did not raise the issue of the uncoupling having been made by a stranger, or by some one not in defendant's employment, or by any employe other than the switchmen or a repairer, and that the withdrawal of the pin by defendant's employes, and their failure to secure the remaining cars to the south so as to prevent their moving to the place of collision, was negligence on their part which proximately caused the plaintiff's injuries.

These findings necessarily dispose of the first assignment of error, as well as all the other assignments presented by plaintiff in error, save the tenth and eleventh, all of which are overruled.

The tenth assignment assails the thirteenth paragraph of the court's charge as being on the weight of the evidence. The paragraph complained of is as follows: "In this connection, however, and to be considered as a part of the preceding paragraph, you are instructed that,

in determining the question whether plaintiff was guilty of 'negligence,' either in attempting to leave the engine, or in the manner in which he attempted to leave it, or in not remaining on the engine, you will consider what a man of ordinary prudence would have done in view of the danger, under the circumstances." The assignment is without merit, and is overruled.

The eleventh assignment complains that the verdict is excessive. The judgment was for $26,000, which we thought, upon consideration of the assignment, was more than sufficient to compensate the plaintiff for the injuries shown by the evidence to have been sustained by him, and we ordered that the judgment of the court below be reversed and the cause remanded, unless the plaintiff should, within twenty days, enter in this court a remittitur of $4,000, thereby reducing the amount of recovery to $22,000. Plaintiff having at once entered the remittitur, the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.