WESTERN UNION TELEGRAPH CO. v. LOVE & WALTERS. (No. 1281.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 30, 1918.)

1. APPEAL AND ERROR ☞742(2)—BRIEFS—ASSIGNMENTS OF ERROR.

Where appellant grouped in its brief several specifications of error in the motion for new trial, to the effect that addressee of a telegram should not have been misled, and that the question was one of law for the court, but left out the fact that the court had refused to give a directed verdict, the grouping was multifarious and the propositions not germane, because such propositions only raised the question of contributory negligence of the addressee, and did not not point out any error of the court.

2. TELEGRAPHS AND TELEPHONES ☞66(1) — NOTICE OF CLAIM—PLEADING.

It will be presumed that a requirement of a telegraph company that notice of claim be made within a specified time has been complied with, unless failure to do so is specially pleaded, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5714, relating to notices of claims for damages.

3. TELEGRAPHS AND TELEPHONES ☞56(2)— LIABILITY OF COMPANY FOR ERRORS IN MESSAGE.

The rule that a telegraph company is not liable to the sender on account of a purchase by the sendee through errors in a message, and that the sender is not liable to the sendee, has no application to an action by the sender who has been assigned the claim of the sendee.

4. TELEGRAPHS AND TELEPHONES ☞56(3)— SATISFACTION OF CLAIM BY THIRD PERSON.

That sender and sendee of telegram arbitrated a loss caused by error in a message, before a board which decreed that they should share in loss equally, did not estop the sendee from suing the telegraph company.

5. TELEGRAPHS AND TELEPHONES ☞56(2) — ERRORS IN MESSAGE — ASSIGNMENT OF CLAIMS.

A purchase by a sender of a telegram for a valuable consideration of a claim of the sendee due to error in message does not extinguish the claim against the telegraph company, in an action by the sender as assignee.

6. TELEGRAPHS AND TELEPHONES ☞70(1) — PAYMENT OF CLAIM BY THIRD PERSON.

That sender of telegram paid to sendee half of loss caused by error in message did not render the telegraph company liable to sendee for less than the whole loss.

Appeal from District Court, Collin County.

Suit by Love & Walters, a firm composed of C. D. Love and G. C. Walters, as assignees of Kreitmair & Co. of Liverpool, England, against the Western Union Telegraph Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Flippen, Gresham & Freeman, of Dallas, for appellant. Merritt & Merritt, of McKinney, for appellees.

HALL, J. This is a suit by Love & Walters, a firm composed of C. D. Love and G. C. Walters, as assignees of Kreitmair & Co., of Liverpool, England, of a claim for damages against appellant company. Appellees sue for damages in the sum of $767, on account of the negligence of appellant in the transmission of a telegram sent by appellees from McKinney, Tex., to Kreitmair & Co., at Liverpool, England, and for $2.52 charged appellant for the transmission of said message. Appellees set up the facts constituting their cause of action substantially as follows: That plaintiffs were at the times herein mentioned engaged in the business of buying and selling cotton to various persons and firms in the United States and foreign countries, including the firm of Kreitmair & Co., of Liverpool, England, and the said firm of Kreitmair & Co. were likewise engaged in said business. That said business was conducted by means of telegrams or messages sent and received from the Western Union Telegraph Company's lines, which messages were in the English language and the contents thereof known to said company, its servants and agents, and all said facts were known to said company. That the market price of cotton, both in the United States and in Liverpool, England, was subject to change and fluctuation from day to day. That the Western Union Telegraph Company owned, controlled, and operated a line of telegraphic communication from McKinney, Tex., to Liverpool, England, over which it transmitted messages generally for the public for hire. That on November 11, 1914, having and desiring to sell a hundred bales of good middling, root staple cotton, at 4.73d., or 9.46 cents per pound, sent Kreitmair & Co. at Liverpool, England, over the lines of the Western Union Telegraph Company, the following message:

"No. 1: Offer two hundred fully mids full eighths four sixty, one hundred mist four eighty five, hundred root four seventy three, answer quick"

—meaning and intending to offer for sale to F. Kreitmair & Co. with other grades of cotton 100 bales of root staple cotton at 4.73d., or 9.46 cents per pound, said message being so understood by F. Kreitmair & Co. That said Kreitmair & Co., desiring to purchase said 100 bales of root staple cotton, and in addition thereto 100 additional bales of said cotton at said price, sent to Love & Walters over the line of the Western Union Telegraph Company, the following reply:

"No. 2: Accept hundred good middling full eighth strictly equal root four seventy three, and bid same price further hundred, sixty days, Parrs, reply quickly"

—meaning and intending to accept said offer of 100 bales of root staple cotton at 4.73d., or 9.46 cents per pound, and to bid the same price for 100 additional bales of said cotton, payment therefor to be made through Parr's bank, and said message was so understood by Love & Walters, but Love and Walters having and desiring to sell only 100 bales of said cotton, on November 12, 1914, sent to Kreitmair & Co. over the line of the Western Union Telegraph Company the following message:

"No. 3. We confirm sale hundred. Make offer on fully mids"

—meaning and intending thereby to confirm the sale to F. Kreitmair & Co. of only 100 bales of said root staple cotton, and the said F. Kreitmair, on said date, in order to make clearer, if possible, and confirm the number of bales of said root staple cotton Love & Walters had sold them, sent to Love & Walters over the line of the Western Union Telegraph Company, the following message:

"No. 4. Presume your confirmation refers to hundred good middling root staple we accepted and hundred same quality we bid for, together two hundred, reply. We now bid four fifty hundred fully middling full eighth prompt shipment, sixty days, Parrs, reply quickly"

—meaning and intending thereby to inform Love & Walters that they (F. Kreitmair & Co.) understood Love & Walters had agreed to sell them 200 bales of good middling, root staple cotton, and not only 100 bales of said cotton, and which message was so understood by Love & Walters, but Love & Walters only having 100 bales of said cotton, and having only agreed to sell 100 bales in order to make clearer, if possible, to Kreitmair & Co. that they had agreed to sell them only 100 bales of said cotton on said date delivered to Western Union Telegraph Company at McKinney, for transmission and delivery to F. Kreitmair at Liverpool the following message:

"No. 5. Confirmation refers to hundred you accepted not two hundred. Offer fully mids to low"

—meaning and intending thereby to inform F. Kreitmair & Co. that Love & Walters had agreed to sell them only 100 bales at said price per pound, being the market price of said cotton at Liverpool on said date, and said cablegram would have been so understood by F. Kreitmair & Co. had it been delivered to them at Liverpool in the form as originally written and delivered to the Western Union Telegraph Company at McKinney. That Love & Walters and F. Kreitmair & Co. paid the Western Union Telegraph Company the price charged for the transmission and delivery of said messages and Love & Walters paid the Western Union Telegraph Company $2.52, the price charged for the transmission and delivery of said last message. That the Western Union negligently failed to transmit and deliver the message last above mentioned, as written, and in the form delivered to it at McKinney, but carelessly and negligently changed its wording and delivered in its stead to F. Kreitmair & Co. at Liverpool, the following message:

"No. 6. Confirmation refers to hundred you accepted to two hundred. Offer fully mids to low."

That the message as delivered to F. Kreitmair & Co. meant and caused them to under-

stand and believe that Love & Walters had sold them 200 bales of cotton at 4.73d. or 9.46 cents per pound. That the same would be delivered to them under said contract, and, acting upon said belief and advice, F. Keitmair & Co. contracted with other parties for the sale to them of said 200 bales of good, middling, root staple cotton. That on or about January 20, 1915, Love & Walters and F. Kreitmair & Co. for the first time discovered that said last-mentioned message had been changed in transmission, and that Love & Walters had agreed to sell Kreitmair & Co. only 100 bales of said root staple cotton, and the market price of said cotton had greatly advanced, and Love & Walters, being unable to furnish said additional 100 bales of said cotton, and Kreitmair & Co. being unable to buy same for a less price, Kreitmair & Co., in order to fill their contract of sale to other parties of said additional 100 bales, and in order to protect themselves against further loss, immediately, and on January 20, 1915, went into open market at Liverpool, England, and purchased 100 bales of cotton of a like kind and quality as the 100 bales of root staple purchased from Love & Walters, but, instead of being able to purchase same at 4.73d. or 9.46 cents per pound, Kreitmair & Co. were compelled to pay for said 100 bales 5.49½d. or 10.99 cents per pound, which was the market price of said cotton in Liverpool, England, on said date, making a difference of .76½d., or 1.53 cents per pound they had to pay for said cotton above the price at which they were led to believe and understand they had purchased same by said message, or the sum of £159 7s. 6d., being the sum of $767 in excess of the price at which they actually purchased the 100 bales of said cotton from Love & Walters. That by the exercise of due diligence the Western Union Telegraph Company could have delivered the message in the form as originally written, and had it been so delivered, F. Kreitmair & Co. would not have sold said 100 bales of cotton to other parties in addition to the 100 bales actually purchased from Love & Walters, and would not have been compelled to go into the open market on January 20, 1915, and buy 100 bales of said cotton to fill their said contract at said loss of £159 7s. 6d., and would not have sustained said loss. That F. Kreitmair & Co. have transferred and assigned to Love & Walters all claims for damages arising out of said matter and transaction, and Love & Walters are the owners of same. That said loss of $767 was sustained by F. Kreitmair & Co. as a direct and proximate result of said negligence of said Western Union Telegraph Company.

The defendant answered by demurrers, general and special, which were not urged, and alleged further, in substance, as follows: It set forth the terms of the contract printed on the back of the message blank, and especially this provision:

"It is agreed that this company shall not be liable for damages in any case where the claim is not presented to it in writing within ninety-five days after the cause of action, if any, has arisen"

—and alleged that the claim was not presented to it within the time specified. The answer further sets up the defense of contributory negligence upon the following grounds: (1) There was no acceptance or confirmation of the offer for an additional 100 bales of Kreitmair & Co. by Love & Walters; (2) because the cablegram actually received by Kreitmair & Co. was sufficient to put them on notice that they had bought only 100 bales originally offered by Love & Walters, and that Love & Walters had not accepted their counter offer for an additional 100 bales; (3) because the correspondence between Love & Walters and Kreitmair & Co. was enough to put them on notice that they had purchased only 100 bales from Love & Walters; (4) because the message sued on and actually received by Kreitmair & Co. was sufficient to put them on notice, and require of them the duty to make inquiries with reference thereto if not clear to their minds; (5) Kreitmair & Co.'s failure, on receipt of said message sued on, to send a further and additional cablegram to Love & Walters for a more definite confirmation was a bar to any recovery thereon, and such failure was a proximate cause of the loss claimed rather than the mistake made in the transmission of the message by defendant.

Upon a trial before a jury, a verdict in the sum of $841.50 was returned in favor of plaintiffs.

[1] Appellee objects to the consideration of appellant's first assignment of error, upon the ground that it fails to distinctly specify any ground of error and to direct the court's attention to any alleged error. This assignment is subject to the further objection that it combines separate and distinct specifications of alleged error, is multifarious, and the propositions under it are not germane. This assignment is made up of a portion of the twelfth ground and the thirteenth ground of appellant's motion for a new trial. The first paragraph of the twelfth ground is:

"Because the court erred in failing and refusing to give this defendant's special charge No. 1, wherein the defendant asked the court to charge the jury as follows: 'You are charged that the law and evidence in this case are with the defendant and you will therefore return a verdict for the defendant.'"

This part of the twelfth ground is not transcribed in the brief, and the only portion of this ground is the third subdivision, as follows:

"Third. Because it does not appear from the language in the said quotation or otherwise in plaintiff's amended petition that F. Kreitmar & Co. had any right to be misled from the language of the message complained of in the portion of the plaintiff's amended petition quoted in

the last paragraph on page 5, and at top of page 6, in plaintiff's amended petition, as said message plainly tells the addressee that their offer referred only to 100 bales, and the offer for the additional 100 bales was too low, and the defendant says that this defendant, even if it was guilty of negligence, as claimed, in the delivery of said message, that it could not have contemplated that addressee would want to go into the market and buy an additional 100 bales, when plaintiffs wired them they only had 100 bales for sale, and the defendant says that plaintiff's amended petition shows that the addressee never thought or contemplated the loss complained of herein until long after such time as by the use of ordinary care and reasonable diligence that they might have known the same, either by wire or mail, if the contents of said message was confusing to them or there appeared to be some error to it."

The thirteenth ground of the motion is as follows:

"Because the court erred in submitting to the jury as a proposition of fact the construction of said message, it being the duty of the court to construe the message alleged to have been changed negligently in transmission, and not a question of fact for the jury."

It is clear that these two assignments are not properly grouped. Without the first part of the twelfth ground of the motion for new trial no error whatever is presented, and no complaint is made of any action of the court. If there is any objection whatever it is that Kreitmair & Co. were not warranted in concluding from the language of some quotation in the pleading, not here set out, that only 100 bales of cotton had been offered; that they were not warranted in buying 100 bales in the open market, and, further, that plaintiff never thought of the loss until long after such time as by the use of reasonable diligence they might have known that there was some error in the cablegram. The purpose of an assignment ordinarily is to complain of some error of the trial court, and not of a want of understanding on the part of the opposing party or of the failure of such party to use diligence. The propositions under this assignment raised the issue of contributory negligence on the part of appellee and Kreitmair, in failing to ascertain whether or not the message had been correctly transmitted, and in guessing at the meaning of ambiguous messages, resulting in the aggravation of their alleged damages. These propositions are certainly not germane to any part of the two assignments quoted above.

[2] By the second assignment of error appellant insists that appellees are not entitled to recover because they failed to notify appellant of their claim for damages within the 95-days period found on the back of the messages. The rule is that where notice of a claim for damages is required to be given, it is presumed that such notice was given, unless the failure to do so is specially pleaded under oath. Vernon's Sayles' Civil Statutes, art. 5714. Appellant's pleadings do not comply with this requirement of the statute, and the fact of notice or no notice cannot be questioned.

The third assignment covers more than eight pages of appellant's brief, and is made up of 12 distinct and separate paragraphs, copied from the motion for new trial. Many of these are argumentative, present no error, and should not have been grouped. The propositions, however, following this assignment, may be appropriately based upon one or more of the grounds set out.

[3] The first proposition is that a telegraph company, which incorrectly transmits a message, is not liable to the sender on account of a purchase made by the sendee in obedience to an error in the message, and, further, that the sender would not be bound under the law to make good the loss of his sendee by reason of the negligence, if any, of the telegraph company. We think both propositions are correct, but they have no application to the facts of this case. The second proposition under this assignment is that:

"Appellees not being liable for the alleged loss of Kreitmair & Co., the payment of said losses by appellees was voluntary and gratuitous, and therefore they have no cause of action against appellant."

Appellees did not base their suit upon damages alleged to have accrued to them by reason of the error in the messages transmitted. They alleged and admit that Kreitmair & Co. were primarily injured by the negligence of appellant, and this suit is filed by them as assignees of Kreitmair & Co. We find in the record a written assignment from Kreitmair & Co. to appellees of their claim for damages.

[4] It was shown by the evidence that for the sake of harmony in their business relations with Kreitmair & Co. appellees submitted to an arbitration before some kind of a board, organized for that purpose in Liverpool, of the matter of the loss growing out of appellant's negligence; that a board of appeals supervising the action of the board of arbitration decreed that appellees and Kreitmair & Co., as between themselves, should share the loss equally, and appellant seeks to defend upon the ground that the result of this award is a satisfaction of appellees' claim, and that appellees and Kreitmair & Co. are estopped from urging their claim against it. In our opinion this is a matter with which appellant is not concerned. As stated in R. C. L. p. 554, § 105:

"As a general rule, partial compensation received from a collateral source, wholly independent of the wrongdoer, cannot operate to lessen the damages recoverable from the latter. * * * So a wrongdoer will not be permitted to benefit by payments made to the injured person from collateral sources, whether in compensation or as a gratuity."

This rule has been adopted by the courts of this state. G., C. & S. F. Ry. Co. v. McKinnell, 171 S. W. 1091; Lipscomb v. H. & T. C. Ry. Co., 95 Tex. 21, 64 S. W. 923, 55 L. R. A. 869, 93 Am. St. Rep. 804; Texas Central Ry. Co. v. Cameron, 149 S. W. 709.

[5] The fourth assignment of error is predicated upon the supposition that the purchase by appellees of Kreitmair & Co.'s claim for damages was a satisfaction of the claim. No such result was ever intended by the parties to the assignment, and as a matter of law the effect of a transfer of the claim for a valuable consideration did not work an extinguishment of it.

[6] Under the fifth assignment it is contended that appellant is responsible to appellee for only the difference between the loss suffered by appellees' assignor by reason of their purchase of the extra hundred bales on the open market and the amount paid the assignors by appellee under the arbitration award. This is not a sound proposition because appellant is responsible for the damages proximately resulting to Kreitmair & Co. without regard to any subsequent transactions between appellee and Kreitmair tending to adjust matters concerning them alone.

Finding no reversible error, the judgment is affirmed.

